IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TESHERIA M. REDMON,  )
                                                           )
       Plaintiff,  )
                                                           )       No. 11 C 8526
v.  )
                                                           )       Magistrate Judge
CAROLYN W. COLVIN,  )       Maria Valdez
Commissioner of Social Security,[1]  )
                                                           )
       Defendant.  )
                                                           )

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Tesheria M. Redmon's claim for Supplemental Security Income and Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Redmon's motion for summary judgment [Doc. No. 24] is granted in part and denied in part, and the matter is remanded to the Commissioner for further proceedings.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

Redmon applied for Supplemental Security Income and Disability Insurance Benefits on June 18, 2007, alleging a disability since December 31, 2006. (R. 135-41.) Her application was denied on September 27, 2007 and upon reconsideration on

---

[1] Carolyn W. Colvin is substituted for her predecessor Michael J. Astrue pursuant to Federal Rule of Civil Procedure 25(d).

January 10, 2008. (R. 70-77, 84-90.) Redmon filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on December 1, 2009. (R. 37.) Redmon personally appeared and testified at the hearing and was represented by counsel. (R. 40, 44-60.) A vocational expert also testified. (R. 60-64.)

On December 14, 2009, the ALJ issued a decision denying Redmon's claim for benefits, finding her not disabled under the Social Security Act. (R. 21-32.) The Social Security Administration Appeals Council denied Redmon's request for review on August 25, 2011, (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.     FACTUAL BACKGROUND

### A.     Background

Redmon was born on August 2, 1978, and was 31 years old at the time of the hearing. (R. 44.) She is 5'4" tall and weighed approximately 404 pounds. (R. 165). At the time of the hearing Redmon lived with her sister and brother-in-law. (R. 53.) She is unmarried and has a son who, at the time of the hearing, she had not seen in twenty days. (R. 44-46.) Redmond received a GED and has attended college courses. (R. 45.) She has worked as a cashier, telemarketer, tutor, and cook. (R. 30, 175.) Redmon claims a disability onset date of December 31, 2006 due to back pain, bipolar disorder, post-traumatic stress disorder ("PTSD"), and paranoia. (R. 166.)

B. **Testimony and Medical Evidence**

1. *Redmon's Testimony*

Redmon was driven to the hearing by her brother-in-law, as she does not have a driver's license. (R. 45.) Generally she utilizes the PACE service for transportation because she is unable to take public transportation. (R. 53-54.) Redmon's most recent work was at Target, where she worked on and off as a cashier for a couple of months from 2006 into 2007. (R. 47.) Prior to that, Redmon worked as a tutor for AmeriCorps, a telemarketer, and a cook. (R. 47-48.) She finds bathing a chore, does not cook, clean, do household chores, or grocery shop. (R. 52.) Redmon's typical day consists of sitting around watching television or lying in bed. (R. 53.) She does not read and seldom uses the computer. (R. 55.)

Redmon claims her disability began on December 31, 2006. (R. 45.) She began having panic attacks, had difficulty getting out of bed, was unable to leave the house, and found it difficult to do anything. (R. 45-46.) At that time she sent her son to live his father. (*Id.*) The panic attacks resulted in emergency room visits. (R. 46.) The treating psychiatric physician at the emergency room suggested the attacks could have resulted from a recent trauma. (*Id.*) Redmon attributed these anxiety attacks to the traumatic revelation that her son had been molested by a relative, which triggered memories of Redmon's own sexual abuse. (*Id.*)

In addition to the panic attacks, Redmon also has issues standing and walking for long periods of time. (R. 49.) For example, she claims to be unable to stand for longer than twelve minutes, and alleges she can only walk a couple of

blocks. (*Id.*) Redmon attributes these limitations to her obesity. (*Id.*) Redmon does not allege any difficulty sitting or any radiation of the back pain. (R. 50.) Redmon experiences regular fears of leaving her home and often misses doctor's appointments as a result. (R. 53.) She has difficulty being around people, as she fears someone is going to cause her harm. (R. 54.) Redmon also has difficulty concentrating, lacks short-term memory, and daydreams often. (R. 54-55.)

In 2007, Redmon noted a slight improvement in her condition lasting about a year. (R. 58.) During that time she was able to go out in public to crowded places, attend school, and enjoy daily life. (*Id.*) Redmon claimed that she returned to feeling scared and unable to go out shortly after this period of improvement. (R. 60.)

At the time of the hearing, Redmon was seeing Dr. Kobie Douglas, a psychiatrist, every two to three months. (R. 48.) Her visits were primarily for evaluation and prescription of medications. (R. 49.) Redmon was also seeing a Dr. Katrina Cordero, a primary care physician, every six to eight weeks. (*Id.*) Redmon was taking a number of prescription medications as well as ibuprofen. (R. 50.) She claimed to take all medications as prescribed and noted that some days the medications seem to work better than others. (R. 50-51.)

### 2. *Medical Evidence*

Starting in late 2005, Redmon sought treatment at the Chatham Avalon Community Mental Health Council, Inc. ("CMHC") in Chicago. (R. 226, 257-68.) Dr. Kobie Douglas, a treating psychiatrist, prescribed a number of medications, including Abilify, Clonazepam, Sertraline, and Trazodone, for her stress, trouble

4

sleeping, bi-polar disorder, and PTSD. (R. 226.) Throughout 2006, Redmon missed five scheduled appointments at CMHC. (R. 262-68.) On February 24, 2006, Dr. Cynthia M. Fowler, a treating psychiatrist at CMHC, noted Redmon reported to be doing better, feeling less paranoid, indicating an ability to travel by bus, go to work, attend some school, feeling active, and out more. (R. 266.) By May 2006, Redmon reported to Dr. Fowler that her anxiety was under control and she had experienced no panic attacks. (R. 265.) Dr. Fowler noted a depressed mood, a decrease in sleep, and increased Redmon's dosage of Abilify due to increased anxiety and paranoia. (*Id.*) By September 2006, Redmon was much less anxious, was able to attend all of her classes, was sleeping well and had good energy. (R. 260.) Dr. Fowler concluded Redmon's symptoms were in remission. (*Id.*)

In May 2007, Redmon was admitted to the emergency room at St. Francis Hospital, where she saw treating physician Dr. John Graneto. (R. 272.) Her weight was estimated at approximately 370 pounds. (*Id.*) Redmon complained of lower back pain that had persisted for one year and was especially painful while standing. (*Id.*) She reported having carried a ten-pound backpack to and from school. (*Id.*) Later that month, Redmon visited primary care physician Dr. Katrina Cordero. (R. 236). Redmon complained of lower back pain starting in April of 2006. During this visit, Redmon weighed in at 394 pounds, and throughout 2007 Redmon's weight fluctuated between 394 pounds and 414 pounds. (R. 238-39.)

In June 2007, Redmon had a follow-up visit with Dr. Cordero, where she complained that the back pain had become worse. (R. 240.) Dr. Cordero discussed

5

Redmon's obesity and suggested an altered diet, referring Redmon for an x-ray of her back. (R. 241.) The x-ray showed sacralization of the L5 vertabrae. (R. 246, 359.) Redmon continued to complain of severe lower back pain and an inability to stand or walk short distances. (R. 242-44.)

On September 11, 2007, Redmon was examined by a State agency-selected psychologist, Robert Neufeld, Ph.D. (R. 305-07.) Redmon told Dr. Neufeld of her 2005 diagnosis of bi-polar disorder, a suicide attempt, her fears of going outside, and an episode of childhood molestation. (*Id.*) She also indicated that she was able to run errands, attend class, and visit the library. (*Id.*) Dr. Neufeld noted Redmon's morbid obesity, back pain, and paranoid ideation. (R. 306-07.)

On September 24, 2007, non-treating psychiatrist Carl Hermsmeyer, Ph.D completed a Psychiatric Review Technique form for Redmon. (R. 287-300.) Dr. Hermsmeyer noted a history of substance abuse, paranoid personality disorder, bi-polar disorder, and PTSD, but concluded after a mental exam and assessment of daily living that Redmon does not meet or equal any Listing for mental disorders. (R. 299.) Dr. Hermsmeyer further noted that while Redmon may have problems with understanding, remembering and the ability to carry out detailed instructions she maintains the ability and mental capacity to complete one and two-step tasks at a constant pace. (*Id.*) In his evaluation of Redmon's mental Residual Functional Capacity ("RFC"), Dr. Hermsmeyer concluded that she is moderately limited in her ability to understand, remember, and carry out very short and simple instructions

and ability to carry out very short and simple instructions but was not significantly limited in any other area. (R. 301-02.)

From October to November 2007, Redmon reported to Dr. Douglas increased anxiety levels and a renewed inability to leave her house due to a fear of the public. (R. 334-36.) Dr. Douglas adjusted Redmon's medications, adding Effexor and substituting Zoloft to improve her condition. (*Id.*)

On January 3, 2008, Dr. Douglas completed a psychiatric report for the Bureau of Disability Determination Services. (R. 312-15.) Dr. Douglas noted Redmon was cooperative and well groomed, with a linear goal directed thought process, but had a depressed and anxious mood. (*Id.*) Douglas reported Redmon's medical history as having suffered from "depressed mood, severe anxiety, recurrent panic attacks, suicidality, severe agoraphobia, [and] hyper vigilance." (*Id.*) Dr. Douglas noted a recent change in medication, due to a poor response, and concluded that Redmon is "unable to function in any social/workplace environment due to severe panic attacks and agoraphobia." (*Id.*) Douglas treated Redmon through a regime of prescription medications including Abilify, Lamictal, Zoloft, and Clonazepam. (R. 315.)

Dr. Douglas also completed a Mental Impairment Questionnaire to determine Redmon's Mental RFC. Dr. Douglas noted poor memory, sleep and mood disturbance, recurrent panic attacks, pervasive loss of interest, a suicide attempt, social withdrawal, manic syndrome, with intrusive recollections of a traumatic experience, and persistent irrational fears. Dr. Douglas determined that Redmon

was depressed with an anxious mood and a blunted affect. (R. 316.) Dr. Douglas anticipated the impairments would last at least twelve months and would cause Redmon to be absent from work more than three times per month. In evaluating Redmon's mental abilities and aptitude to do unskilled work Dr. Douglas found Redmon to rate "poor" in the areas of her ability to maintain regular attendance and punctuality, work in coordination or proximity with others, complete a normal workday and workweek, and deal with normal work stress. (R. 318.) She was rated "fair" in her ability to ask simple questions, accept instructions and criticism, get along with coworkers, and respond to changes in a routine work setting. (*Id.*) Dr. Douglas attributed the "fair" and "poor" ratings to Redmon's recurrent panic attacks, her agoraphobia, and depressed mood, noting that none of the symptoms were related to drug/alcohol abuse. (R. 319.) Dr. Douglas indicated Redmon often had difficulty concentrating, was extremely limited in her ability to maintain social functioning, experienced repeated (three or more) episodes of decompensation, and had a marked limitation in activities of daily living. (*Id.*)

On February 4, 2008 Dr. Cordero completed a Physical RFC. (R. 342-44.) Dr. Cordero noted that she had seen Redmon every two to three months for the last eight months and diagnosed her with morbid obesity, chronic migraines, and bi-polar disorder, further noting lower back pain, swelling in the lower extremities, and a body mass index of fifty-four. (R. 342.) Dr. Cordero also found that Redmon's exhibited psychological conditions including depression and bi-polar disorder likely contributed to her physical impairments. (*Id.*) Dr. Cordero indicated that Redmon's

8

pain and other symptoms were severe enough to cause frequent interference with her ability to concentrate and perform simple work tasks. (R. 343.) Dr. Cordero determined that Redmon possessed the following physical limitations: she can walk less than one city block without requiring rest or experiencing severe pain; she can only stand for at most five minutes before needing to sit down or walk around; she can only stand or walk around for at most two hours in an eight hour work day; and she can sit for six or more hours in an eight hour day, but she requires her legs be elevated eight to ten inches for the entire time she is sitting. (*Id.*) Redmon is also limited in her ability to lift and carry weight. She can occasionally lift or carry weights of less than ten pounds, can rarely lift or carry weights of ten pounds, and can never lift or carry weights of twenty to fifty pounds. (R. 344.) Redmon's limitations are consistent, and are not likely to produce "good days" and "bad days." (*Id.*)

In March 2008, Redmon visited Dr. Douglas at CMHC and exhibited no anxiety or compulsions. (R. 388.) Dr. Douglas noted that everything was within normal limits. (*Id.*) In August 2008, Redmon visited CMHC again and reported that she was doing well and had not had any recent symptoms. (R. 374-75.) In late October 2008, Redmon underwent gastric bypass surgery,[2] and she had a follow-up visit with Dr. Douglas on December 3, 2008 where she reported she had improved, that classes were going well, and she had no recent panic attacks. (R. 390.) From February to May 2009, Redmon visited Dr. Douglas occasionally, exhibiting no

---

[2] The record does not indicate what Redmon's weight was after the gastric bypass surgery, or whether her physical condition improved following the surgery.

anxiety that was not controlled by medication, and she stated that she was doing well, had a stable mood, and all signs were within normal limits. (R. 382-83.)

### 3. *Vocational Expert's Testimony*

Pamela Tucker testified at the hearing as a Vocational Expert ("VE"). The ALJ presented Tucker with a hypothetical person who has the same age, education and work experience as the claimant and the RFC to perform work at all exertional levels; the person can understand, remember and execute short and simple instructions; the person can concentrate and persist adequately on tasks within an organized setting which would allow her to work at her own pace; the person should have occasional interactions with others, and be able to adjust to routine changes in her environment as long as they are not too frequent. (R. 62-63.) The VE determined that the hypothetical person would not be capable of performing any of Redmon's past work. (R. 63.) However, the VE testified that the person could work as a Laundry Worker (approximately 4,000 jobs in the regional economy), a Night Store Laborer (approximately 2,500 jobs), and a Night Cleaner (approximately 3,000 jobs). (R. 63.)

The ALJ then adjusted the hypothetical, adding the limitations of only being able to occasionally complete a normal work day and work week without interruption from psychologically based symptoms, and only being able to occasionally perform at a consistent pace without an unreasonable number and length of rest periods. The VE determined that no work would exist for the hypothetical person with these added limitations. (R. 64.)

## B. ALJ Decision

The ALJ found that Redmon had not engaged in substantial gainful activity since December 31, 2006. (R. 23.) At step 2, the ALJ concluded that Redmon had the following severe impairments: lumbago, general lower back pain, obesity, bipolar disorder, post-traumatic stress disorder, and acute paranoia. At step 3, the ALJ found that none of Redmon's impairments, alone or in combination, met or equaled a Listing. (*Id.*)

The ALJ next determined that Redmon had the RFC to perform a full range of work at all exertional levels. (R. 25.) The ALJ then concluded, based on the testimony of the vocational expert, and considering Redmon's age, education, work experience, and RFC, that Redmon could perform a significant number of jobs in the national economy, and therefore she was not disabled under the Social Security Act. (R. 31.)

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does

the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence,

resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Redmon argues that the ALJ erred by improperly analyzing her credibility, failing to give sufficient weight to her treating physicians' opinions, and wrongly

assessing her RFC. The Court finds that the record evidence supports the ALJ's decision not to give controlling weight to the treating physicians' RFC conclusions that Redmon was wholly disabled. A treating physician's opinion is to be given "controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record. . . . An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citations omitted). But in this case, the ALJ specifically noted that Redmon reported significant improvement in her condition since the time her treating physicians completed their RFCs, and thus she was justified in not giving those opinions controlling weight. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010) ("[T]he opinion of a treating physician is entitled to controlling weight only if supported by objective medical evidence.").

Similarly, the Court finds that there was substantial evidence generally supporting the ALJ's finding that Redmon's claims of completely disabling symptoms were not credible in light of the record. While the ALJ's credibility determination relied in part on stock language sharply criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), the decision went beyond the boilerplate by noting that Redmon's allegations of disability and impairment were countered by specific instances of Redmon reporting to her doctors an improved and unimpaired condition that allowed a return to normal daily activities.

However, the ALJ did not sufficiently discuss Redmon's credibility with respect to her claims of episodic symptoms, because her testimony about occasional panic attacks is not inconsistent with her statements to physicians that her symptoms had improved. This analysis is necessary in light of the VE's testimony that there would be no jobs in the regional economy for a person who would often be interrupted by psychologically based symptoms and/or be absent more than one day a month.

Moreover, the matter must be remanded for a more reasoned analysis of Redmon's physical RFC. The ALJ concluded that Redmon has the RFC "to perform a full range of work at *all exertional levels*." (R. 25) (emphasis added). There is no evidence in the record suggesting that Redmon, a 5'4" female, weighing between 390 and 440 pounds with a BMI exceeding fifty-four and a history of back pain is capable and expected to perform work at all exertional levels, which would include heavy work (requiring frequent lifting of objects up to fifty pounds) and very heavy work (requiring frequent lifting of objects weighing more than fifty pounds). *See* 20 C.F.R. § 404.1567. The ALJ's mention of Redmon's ability to stand for over ten minutes at a time, walk two blocks, and carry a ten-pound backpack does not support her ultimate conclusion that Redmon has no physical limitations at any exertional level.

## CONCLUSION

For the foregoing reasons, Plaintiff Tesheria M. Redmon's motion for summary judgment [Doc. No. 24] is granted in part and denied in part, and the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**  **ENTERED:**

*[signature: Maria Valdez]*

**DATE:** **June 4, 2014**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**